UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| 4900 MORSE LAND TRUST, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 2:23-cv-40-PPS-JPK |
| ) | |
| OCCIDENTAL PETROLEUM CORPORATION, ) | |
| and OXY USA, INC., ) | |
| ) | |
| *Defendants*. ) | |

## OPINION AND ORDER

On December 27, 2022, Plaintiff 4900 Morse Land Trust ("the Trust") filed a complaint in state court against Defendants Occidental Petroleum Corporation and Oxy USA, Inc. alleging that Defendants released hazardous substances and/or petroleum at a property located at 4900 Morse Street, Gary, Indiana 46406, and then, rather than fully addressing the issues caused by their contamination, left them to be addressed by the Trust, who is the current owner of the property. [DE 8 ¶ 1]. The complaint alleges that the Trust brought this action to recover the costs it has incurred in addressing the contamination and the costs it will incur to address the contamination in the future. [*Id.*]. On February 2, 2023, Defendants removed the Trust's state court complaint, alleging federal jurisdiction under the diversity statute, 28 U.S.C. § 1332. [DE 1 ¶ 12].

The Court must continuously police its subject matter jurisdiction and remand a removed action over which the Court lacks subject matter jurisdiction. *See Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002); 28 U.S.C. § 1447(c). For the Court to have diversity jurisdiction, no defendant may be a citizen of the same state as any plaintiff, and the amount in controversy must exceed $75,000.00 exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *Webb v. Fin. Indus. Regulatory Auth., Inc.*, 889 F.3d 853, 856 (7th Cir. 2019). As the party seeking

federal jurisdiction, Defendants have the burden of establishing that subject matter jurisdiction exists. *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802-03 (7th Cir. 2009). The Court is unable to determine from the current allegations in the record if either requirement for diversity jurisdiction—complete diversity or the jurisdictional minimum—has been met. Accordingly, the Court issues this order *sua sponte* to address those questions.

### A.   COMPLETE DIVERSITY

The Notice of Removal alleges that both Defendants (Occidental Petroleum Corporation and Oxy USA Inc.) are Delaware corporations, with their principal places of business in Houston, Texas. [DE 1 ¶¶ 6-7]. A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). By the term "Delaware corporation," the Court assumes Defendants mean that both Defendants are incorporated in that state. With that assumption, Defendants are citizens of Delaware and Texas.

The Notice of Removal alleges there is complete diversity in this case because the Trust is an Indiana citizen. The factual bases for that allegation are the further allegations that the Trust is "an Indiana land trust, managed and administered in Indiana," and that "Todd Hansen, an Indiana citizen who resides in Avon, Indiana, is the trustee of [the Trust]." [DE 1 ¶ 5]. The alleged facts, however, are insufficient for the Court to determine that the Trust is an Indiana citizen.

To the extent that Defendants' allegation of Indiana citizenship is premised on the rule that a trust's citizenship for purposes of the diversity statute turns on the citizenship of the trustee, their reliance on that rule is understandable. *See, e.g., Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 901 (7th Cir. 2010); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006); *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002); *Downey v. State Farm Fire & Cas. Co.*,

266 F.3d 675, 680 (7th Cir. 2001). But the unqualified statements in these cases to that effect do not account for the Supreme Court's decision in *Americold Realty Trust v. ConAgra Foods, Inc.*, 577 U.S. 378 (2016), which clarified that the Court's earlier decision in *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980), does not "establish[ ] a rule applicable to all kinds of trusts." *RTP LLC v. ORIX Real Estate Capital, Inc.,* 827 F.3d 689, 691 (7th Cir. 2016).

In *Navarro*, eight individual trustees of a trust organized under Massachusetts law sued a savings association in federal court on a breach of contract claim. 446 U.S. at 459. While the citizenship of the trustees differed from that of the savings association, some of the trust's beneficiaries were citizens of the same state as the savings association. *Id*. at 460. In examining whether the citizenship of the trustees or the trust beneficiaries controlled the diversity question, the Supreme Court observed that the trustees who initiated the lawsuit "possesse[d] certain customary powers to hold, manage, and dispose of" trust properties, and therefore the trustees were permitted "to sue in their own right." *Id.* at 464-66. The Court held that when trustees initiate a lawsuit in their own name or are the target of a suit, courts consider only the citizenship of the trustees for purposes of determining diversity jurisdiction. *Id.* at 465–66.

After *Navarro*, the Supreme Court decided *Carden v. Arkoma Assocs*., 494 U.S. 185 (1990), a case involving a limited partnership which brought a contract dispute to federal court based on diversity jurisdiction. *Id.* at 186. The limited partnership argued that its citizenship should be determined solely by the citizenship of its general partners, without regard to the limited partners, because the general partners "have exclusive and complete management and control of the operations of the partnership[,]" akin to the approach taken with the trust at issue in *Navarro*. *Id.* at 192 (citation omitted). The Supreme Court declined to extend its reasoning from *Navarro*, however, saying that "*Navarro* had nothing to do with the citizenship of the 'trust,' since it was a

3

suit by the trustees in their own names." *Id. Carden*, in contrast, concerned determining the citizenship of "an artificial entity, [i.e., a limited partnership,] suing or being sued[.]" *Id.* Ultimately, the Court held that the citizenship of a limited partnership is based on the citizenship of all its partners; that is, the citizenship of each general and limited partner. *Id*. at 195–96.

Following *Navarro* and *Carden*, the Supreme Court decided *Americold Realty*, a case involving a real estate investment trust ("REIT"), which removed a lawsuit against it to federal court based on diversity jurisdiction. 577 U.S. at 379. The Supreme Court likened the REIT to other unincorporated business associations, like joint-stock companies or partnerships, each of which has as its citizenship the citizenship of its members. *Id*. at 381. The Court declined to apply the rule in *Navarro* that based diversity on the citizenship of the trustee, because it "ha[s] reminded litigants before …. [that] *Navarro* had nothing to do with the citizenship of [a] "trust." *Id*. at 382. "Rather, *Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person." *Id.* at 382-83 (emphasis in original). According to the Court, "[t]his rule coexists with" the Court's holding in *Carden* that "when an artificial entity is sued in *its* name, it takes the citizenship of each of its members." *Id.* at 383 (emphasis in original). Nevertheless, the Court acknowledged that "confusion regarding the citizenship of a trust is understandable and widely shared." *Id.* As the Court further explained:

> The confusion can be explained, perhaps, by tradition. Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple people. Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued.

*Id.* (internal citations omitted). The Court went on to distinguish business trusts from traditional trusts, as follows:

> Many States, however, have applied the "trust" label to a variety of unincorporated entities that have little in common with this traditional template. Maryland, for example, treats a real estate investment trust as a "separate legal entity" that itself can sue or be sued. So long as such an entity is unincorporated, we apply our "oft-repeated rule" that it possesses the citizenship of all its members. But neither this rule nor *Navarro* limits an entity's membership to its trustees just because the entity happens to call itself a trust.

*Id.* (internal citations omitted).

Courts have acknowledged that it is not entirely clear what the Supreme Court meant by the statement in *Americold Realty* that "[f]or a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued."[1] Nevertheless, "one thing seems clear: the Court was declaring that, because a business trust is an artificial legal entity and a traditional trust is not, the citizenship of a traditional trust must be determined differently than that of a business trust." *GBForefront, L.P.,* 888 F.3d at 38–39 (footnotes omitted). Similarly, following *Americold Realty,* the Seventh Circuit acknowledged that, while its previous decisions in *Hicklin Engineering*, 439 F.3d 346, and *May Department Stores,* 305 F.3d 597, "understood *Navarro* … to stand for the proposition that the citizenship of every trust is the

---

[1] *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 38 & n.11 (3d Cir. 2018) (quoting *Zoroastrian Ctr. & Dar–E–Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 749 (4th Cir. 2016) ("For example, does the phrase mean that there is no need to determine entity membership for diversity purposes when a 'traditional trust' is sued as an entity? Or do we read the statement to mean that a trust sued as an entity must prove entity membership because it is a separate legal person from the individual trustees?")); *see also Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 728 (2d Cir. 2017) ("As our sister circuits have observed, the last quoted statement in *Americold* [about there being no need to determine the membership of a traditional trust] may generate as many questions as it answers." (internal quotation marks and citations omitted)); *see also Silverstein v. Wolf,* No. 22-CV-01817-PAB, 2022 WL 11246236, at *2 (D. Colo. Oct. 19, 2022) (stating that *Americold Realty* "is open to interpretation").

citizenship of its trustees," the "jurisdictional views expressed in [those cases] (and the many similar decisions in this circuit and elsewhere) did not survive *Americold*." *RTP LLC*, 827 F.3d at 691, 692. *RTP* involved a suit removed to federal court where the plaintiffs were two limited liability companies, each of which had the citizenships of their members under the rule stated in *Carden*. *See id.* at 691. The members of both limited liability companies were two retirement funds, which were "organized as trusts under Michigan law but can sue and be sued in their own names." *Id.* The Seventh Circuit emphasized that "[t]he trusts themselves, not the trustees, are the members of the two LLCs," and those trusts "contract (and litigate) in their own names." *Id.* at 692. The Seventh Circuit thus concluded that, applying *Americold Realty*, the citizenship of the trusts, not the trustees, was what counted, and that the trusts have the citizenship of their members. *Id.* at 691 ("While humans and corporations can assert their own citizenship, other entities take the citizenship of their members." (quoting *Americold Realty*, 577 U.S. at 379)).

According to one district court, "at least six circuits" have interpreted *Americold Realty* as establishing that, "in contrast to a business trust, the citizenship of a traditional trust is determined solely by the citizenship of its trustees. Thus, in order to demonstrate a trust's citizenship, a party must allege facts demonstrating that the trust is either a traditional trust or a business trust. If the trust is a traditional trust, the party must then trace the citizenship of all of its trustees; if the trust is a business trust, the party must trace the citizenship of all of its members." *Silverstein,* 2022 WL 11246236, at *2 (internal quotation marks and citations omitted) (footnote omitted); *see GBForefront, L.P.,* 888 F.3d at 40 ("*Americold Realty* … instructs that there is a difference of jurisdictional significance between traditional trusts—which embody a fiduciary relationship—and business trusts—which, though they bear the 'trust' name, are unincorporated business entities."). The Seventh Circuit has not discussed the issue in any detail but also appears to follow

this interpretation of *Americold Realty*. *Compare Doermer v. Oxford Fin. Grp. Ltd*, 884 F.3d 643, 648 (7th Cir. 2018) (holding that the trustees were the "real parties in interest" in that case because "traditional trusts such as the one at issue here—as opposed to so-called 'business trusts,' which are a newer invention—were not considered distinct legal entities at common law, and hence cannot sue or be sued in their own name," and so "legal proceedings involving these trusts must be brought by or against the trustees in their own name[s]" (internal quotation marks and citations omitted) (quoting *Americold Realty*)); *with RTP LLC*, 827 F.3d at 691-93 (holding that the citizenships of the members of a business trust that could sue in its own name under state law controlled the diversity question).

But the Seventh Circuit has not delineated what constitutes a traditional trust versus a business trust. Other courts, however, have noted that:

> There are two principal distinctions between a traditional trust and a business trust. First, a traditional trust exists as a fiduciary relationship, while a business trust is treated as a distinct legal entity. Second, a traditional trust facilitates a donative transfer, whereas a business trust implements a bargained-for exchange. The Ninth Circuit has identified additional factors to consider when defining a trust, including the nature of the trust as defined by the applicable state law, whether the trust has or lacks juridical person status, whether the trustee possesses real and substantial control over the trust's assets, and the rights, powers, and responsibilities of the trustee, as described in the controlling agreement.

*McLaughlin v. Hughes,* No. 21-CV-03026-PAB, 2021 WL 5359404, at *2 n.1 (D. Colo. Nov. 17, 2021) (quoting *GB Forefront*, 888 F.3d at 40-41, and *Demarest v. HSBC Bank USA, N.A. as Tr. for registered holders of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2*, 920 F.3d 1223, 1229–30 (9th Cir. 2019) (internal citations omitted)); *see also Raymond Loubier Irrevocable Tr.*, 858 F.3d at 729-32; *Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019).

Here, the complaint was filed by the Trust, not the trustee of the Trust, which suggests that the Trust, unlike a traditional trust, has the capacity under the law of the state in which it was created (Indiana apparently, *see* [DE 1 ¶ 5]) to sue and be sued. *Compare Fam. Prot. Irrevocable Tr. v. Bales*, No. CIV-22-1039-F, 2022 WL 17741710, at *2 (W.D. Okla. Dec. 16, 2022) ("[I]f plaintiff Family Protection Irrevocable Trust is a traditional trust, it is not a distinct legal entity that may bring a civil action in federal court. Legal proceedings involving a traditional trust must be brought by the trustee in his or her own name." (citing *Americold Realty*)). If that is the case, then, pursuant to *Americold* and *RTP*, the Trust would likely be considered a business trust, and thus have the citizenship of its members, not its trustee.[2]

---

[2] *See, e.g., Leoris v. Chi. Title Land Tr. Co.*, No. 18-CV-02575, 2018 WL 2689129, at *2 (N.D. Ill. June 5, 2018) (explaining that "the Illinois land trust … [is] a unique type of trust in which the trustee has virtually no power," that "[l]and trusts vest the usual attributes of ownership" in the beneficiaries, who, "have complete control over the property," and that "the trustee has no duties or powers other than to execute deeds and mortgages or otherwise to deal with the property as directed by the holder of the power of direction" (internal quotation marks and citations omitted)); *Diamond State Ins. Co. v. Davidson,* No. CIV. 12-312-GPM, 2012 WL 1391663, at *2 (S.D. Ill. Apr. 20, 2012) ("[W]hile ordinarily the citizenship of a trust is that of its trustee or trustees, if the law under which the trust is organized permits the trust to sue and be sued in its own name, the citizenship of the trust for diversity purposes is that of its beneficiary or beneficiaries. In particular, the citizenship for diversity purposes of a land trust organized under Illinois law is that of the trust's beneficiaries." (internal citations omitted) (citing *inter alia*, *Robin Realty & Mgmt. Co. v. Karosen*, No. 91 C 4640, 1992 WL 281343, at *4 (N.D. Ill. Oct. 5, 1992) ("The functions of the trustee of a land trust are so limited, and the retention of the attributes of ownership of the real estate by the owner of the beneficial interest is so complete, that the trustee of a land trust is not the sort of trustee contemplated in Rule 17(a)'s statement that 'A [ ] ... trustee of an express trust ... may sue in that person's name without joining the party for whose benefit the action is brought.' Where a land trust is involved, it is the owner of the beneficial interest who is the real party in interest for purposes of Rule 17(a), and it is in the name of the owner of the beneficial interest that any action involving the land trust should be prosecuted." (internal citations omitted))); *Fagan Enters., Inc v. Constantin Land Tr.,* No. CIV.A. 98-333, 1998 WL 195984, at *1 (E.D. La. Apr. 22, 1998) ("the citizenship of a land trust is determined by looking to the citizenship of its members, including its investors or beneficiaries and not simply its trustees" (citing *Riverside Memorial Mausoleum, Inc. v. Umet Tr.*, 581 F.2d 62, 65 (3rd Cir. 1978)); *compare Wilmington Tr., Nat'l Ass'n as Tr. for Holders of UBS Com. Mortg. Tr. 2018-C10, Com. Mortg. Pass-Through Certificates, Series 2018-C10 v. 410 S. Main St. LLC*, 584 F. Supp. 3d 689, 705 (N.D. Ind. 2022) (holding that, where Wilmington Trust (which, despite its name, is a national bank), brought suit

But the bottom line is that Defendants have not alleged facts to establish what type of trust the 4900 Morse Land Trust is. That is the first required step. Then, if the facts alleged establish the Trust is a traditional trust, Defendants must clearly allege that Todd Hansen is the *sole* trustee, or identify all trustees[3] and trace the citizenship of each. And if the facts alleged establish the Trust is a business trust, Defendants must identify all members or beneficiaries of the Trust and trace the citizenship of each. Defendants have not clearly alleged what type of trust the Plaintiff is, or, depending on the applicable rule, identified its members or all trustees and their citizenship. For this reason, the Court is unable to determine the citizenship of the 4900 Morse Land Trust.

B.     **AMOUNT IN CONTROVERSY**

The Notice of Removal alleges that the matter in controversy exceeds $75,000.00. "If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), … the notice of removal may assert the amount in controversy if the initial pleading seeks … a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A)(ii). The Seventh Circuit, however, "treat[s] the amount-in-controversy threshold as a 'pleading requirement.'" *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021) (quoting *Blomberg v. Serv. Corp., Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)). Thus, a conclusory allegation in the notice of removal, such as an allegation that more than $75,000 is in controversy, is not sufficient as it fails to satisfy the plausibility pleading requirement. *See, e.g., Cellucci v. O'Leary*, No. 19-CV-

---

in its capacity as trustee for a real estate mortgage investment conduit ("REMIC") trust, "its own citizenship, and not that of the trust, is what counted for subject matter jurisdiction purposes (citing *Americold Realty*)).

[3] If there are multiple trustees, Defendants may also establish that Hansen, as one of the trustees, has the authority acting alone to bring a claim on behalf of the trust. *See, e.g., Schneider v. Schneider*, No. 19-CV-980-JDP, 2020 WL 3642364, at *1–2 (W.D. Wis. July 6, 2020).

9

2752 (VEC), 2021 WL 242806, at *2 (S.D.N.Y. Jan. 25, 2021) (citing cases). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed" the amount-in-controversy threshold of a jurisdictional statute, "then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Ware*, 6 F.4th at 732 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). But the Notice of Removal here does not allege any facts that plausibly explain why the amount in controversy exceeds $75,000.

To remove a case based on an allegation that the jurisdictional minimum is satisfied by the plaintiff's state court complaint which neither makes a demand for a specific sum nor contains facts from which a specific amount can plausibly be inferred, the defendant must "receive[ ] a pleading or other paper that affirmatively and unambiguously reveals … the amount of monetary damages sought. This bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). The *Walker* court noted that a defendant wishing to remove a complaint without such a disclosure should use other means to seek that information prior to removal, such as jurisdictional requests for admission. *Id.* at 824 n.4. Facts within Defendants' knowledge tied to specific allegations in the complaint concerning the relief sought by Plaintiff also may be sufficient to plausibly allege the amount in controversy. *See Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234 (7th Cir. 2021). But Defendants here have cited neither jurisdictional requests for admission by Plaintiff nor factual information concerning the costs of remediation of which they have personal knowledge.

First, the Notice of Removal alleges that "[t]he amount-in-controversy exceeds $75,000, exclusive of interest and costs, based on the demand by Plaintiff which sought in excess of

10

$75,000, exclusive of interest and costs, concerning the allegations advanced in Plaintiff's Complaint." [DE 1 ¶ 10]. It is not clear to the Court what Defendants mean when they refer to "the demand by Plaintiff which sought in excess of $75,000." If what Defendants are trying to say is that, following Plaintiff's filing of the state court complaint, Plaintiff made some kind of "demand" that satisfies the "other paper" requirement in 28 U.S.C. § 1446(b)(3), then the deficiency may be only a matter of "inartful drafting on a technical point," *GBForefront, L.P.,* 888 F.3d at 36, which can easily be corrected with additional allegations in a supplemental statement.

The Notice of Removal also alleges that "[a]mong other things, Plaintiff alleges it is entitled to recover all costs to complete characterization [sic] and remediation of the site described in the Complaint. Plaintiff's Complaint contains a claim under Indiana's Environmental Legal Action Statute." [*Id.* ¶ 11]. While, again, it may be merely a technical pleading matter, the Court cannot assume that such allegations plausibly give rise to more than $75,000 in controversy. Defendants must allege additional facts quantifying the remediation costs in a way that renders plausible that those costs will exceed the jurisdictional minimum. *See, e.g., Redfield v. Uthe*, No. 2:20-cv-199-TLS-JPK, 2021 WL 2451906, at *3 (N.D. Ind. June 15, 2021) (under the standard articulated in *Walker*, allegations of "permanent and severe personal injuries" in a state court complaint are not sufficient by themselves to trigger a right to remove under the diversity statute).

## CONCLUSION

Given the importance of determining the Court's jurisdiction to hear this case, Defendants must allege a sufficient basis for concluding the requirements of the diversity statute are met for this Court to assert subject matter jurisdiction over the removed state court complaint. Therefore, the Court **ORDERS** Defendants to **FILE** a supplemental jurisdictional statement on or before **March 6, 2023**.

So ORDERED this 14th day of February, 2023.

                                                  s/ Joshua P. Kolar
                                                  MAGISTRATE JUDGE JOSHUA P. KOLAR
                                                  UNITED STATES DISTRICT COURT